**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**NOT FOR PUBLICATION**

|  |  |
|---|---|
| MARC FRATO, | Civil Action No. 10-5198 (ES) (CLW) |
| Plaintiff, | **OPINION** |
| v. |  |
| SWING STAGING, INC., et al, |  |
| Defendants. |  |

**SALAS, DISTRICT JUDGE**

This matter is before the Court by way of Plaintiff Marc Frato's ("Plaintiff") motion for reconsideration ("Motion"), (D.E. 30), challenging this Court's granting of Defendants' Swing Staging, Inc. ("Swing Staging"), John Pantanelli, Twin and Swing Scaffolding, Inc. ("Twin and Swing"), and J.P. Holdings, LLC's (collectively "Defendants") motion to transfer venue to the Eastern District of New York, (D.E. 11), pursuant to 28 U.S.C. § 1404(a).  This Court has jurisdiction under 28 U.S.C. §§ 1332(a)(1) and (c).  For the reasons set forth below, the Motion is hereby DENIED.

**I.    FACTS**

   **A.    Parties, Proceedings, and Positions**

The underlying dispute in this case involves Plaintiff's action to enforce his contractual rights under a "Stock Redemption Agreement" ("SRA").  (Compl. ¶¶ 32-68).  Plaintiff commenced this diversity action against Swing Staging, its subsidiary, Twin and Swing (collectively the "Corporate Defendants"), the Corporate Defendants' president, Mr. Pantanelli,

and J.P. Holdings.  (Compl. ¶¶ 6-14).  In 1999, Plaintiff and Swing Staging entered into three agreements.  First, under the "Asset Purchase Agreement" ("APA"), Swing Staging purchased Plaintiff's former company assets.  (Compl. ¶¶ 17-18; D.E. 11-6, Ex. D attached to D.E. 11-2, affidavit of Defendant Pantanelli on February 18, 2011 ("Pantanelli Aff.")).  Second, on November 3, 2009, at or around the same time as the parties entered into the APA, Plaintiff entered into an employment agreement ("Employment Agreement") whereby Plaintiff would work for Defendant Swing Staging in its Queens, New York office.  (Compl. ¶¶ 19, 21-23, 25; D.E. 13-3, Certification of Marc Frato in Opposition to the Defendants' Motion, dated March 6, 2011 ("Frato Cert.") ¶ 9).  Finally, also on November 3, 1999, Plaintiff and Defendant Swing Staging entered into the SRA.  (Compl. ¶¶ 19-20; Frato Cert. ¶ 9).  On May 28, 2008, Plaintiff ceased his employment with Defendant Swing Staging and filed a claim asserting breach of the SRA.  (Compl. ¶¶ 25, 38; Frato Cert. ¶ 15; *see* Compl. ¶¶ 32-68).

Defendants have not filed an answer in this action, and instead filed a motion to change venue to the Eastern District of New York, which this Court granted on August 17, 2011.  (D.E. 29).  Plaintiff filed the instant Motion on August 30, 2011.  On or about September 6, 2011, Defendants filed a counterclaim ("Counterclaim") in the Eastern District of New York alleging that Plaintiff breached the non-compete provision in the Employment Agreement.  On September 18, 2011, Defendants filed an opposition to the Motion, (D.E. 32), and on September 26, 2011, Plaintiff submitted a reply letter brief in further support of the Motion.  (D.E. 35).

  **B.**  **Decision on Defendants' Motion to Transfer Venue**

On August 17, 2011, this Court granted the Defendants' motion to transfer venue to the Eastern District of New York.  *Frato v. Swing Staging, Inc.*, No. 10-5198, 2011 U.S. Dist. LEXIS 91754 (D.N.J. Aug. 17, 2011).  The Court found that the Eastern District of New York

was a proper venue for the Plaintiff's action because the Corporate Defendants transacted business there, and a majority of the events giving rise to the action occurred in New York. *Id*. at \*8-9. The Court found that Plaintiff's claims revolved around Defendants' alleged failure to compensate Plaintiff for his ownership interest in Swing Staging, which is a New York Corporation. *Id*. at \*8. The Court also concluded that if Swing Staging diverted assets to Twin and Swing, as the Plaintiff contested, then such allegedly tortious activity likely took place in New York. *Id*. As a result, the Court found that Plaintiff could have filed the action in the Eastern District of New York and transfer of venue was proper. *Id*. at \*9.

      C.      **Arguments on the Motion for Reconsideration**

In his Motion, Plaintiff argues four points. First, he argues that the Court should grant the Motion to correct a clear error of law, namely that the Court "provided little or no deference to Plaintiff's choice of forum." (D.E. 30 at 8). Second, Plaintiff argues that the Court wrongly weighed the *Jumara* private interest factors "in favor of transfer because the Plaintiff's choice of forum was given little deference." (*Id*. at 13). Plaintiff states that he "establish[ed] that his choice of forum in New Jersey has connection with the operative facts of the lawsuit and should be given great deference." (*Id*. at 11). Third, Plaintiff argues that the Court "failed to consider a key fact" by failing to consider Defendants' Counterclaim in reaching its decision on the motion to transfer venue. (*Id*. at 16). Last, Plaintiff argues that he will suffer a "hardship" and will be "greatly inconvenienced [by transfer to the Eastern District of New York] because his New Jersey counsel will need to seek to be admitted *pro hac vice* or Plaintiff will need to find new counsel that is admitted to practice in New York." (*Id*. at 17).

In their combined opposition, Defendants argue that "Plaintiff fails to note that reconsideration is deemed an extraordinary remedy . . . . and that it is improper to ask a Court to

3

rethink what it has already thought through . . . ." (D.E. 32 at 2). Defendants next argue that the Court found that "the events giving rise to this action bear little relation to New Jersey." (*Id*. at 3). Defendants further argue that the Court did not overlook the intended Counterclaim, instead the Court refused to consider it. (*Id*.). Defendants state that even if the Court had considered the Counterclaim, "its decision would have been the same" because "[t]he interest of New York vis-à-vis the 'non-compete' provision of a New York contract pertaining to a New York corporation operating in New York exceeds that of New Jersey." (*Id*. at 4). Lastly, Defendants argue that Plaintiff's "hardship" argument "was not raised in opposition to the underlying motion and is not therefor[e] properly raised on a motion to reconsider." (*Id*.). Defendants also state that there are at least two attorneys who are admitted to practice in New York currently practicing at Plaintiff's counsel's law firm. (*Id*. at 4-5).

In his reply, Plaintiff repeats that the Court erred in providing little or no deference to his choice of forum because he established that his "choice of forum in New Jersey has a direct connection with the operative facts of the lawsuit and should be given great deference." (D.E. 35 at 2). Plaintiff further argues that Defendants' Counterclaim is new evidence not previously available since Defendants had not filed their Counterclaim when the motion to transfer venue was decided. (*Id*. at 3). Plaintiff asserts that because Defendants have since filed their Counterclaim, the Court now has new evidence that implicates "New Jersey law and relates to acts and events involving a New Jersey Resident that occurred in New Jersey." (*Id*.). Below, the Court explains why Plaintiff has failed to show that reconsideration of this Court's granting of Defendants' motion to transfer venue is warranted.

4

## II. LEGAL STANDARD

A party seeking reconsideration must satisfy a high burden, and must "show[] at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously when the court granted the motion . . . ; or (3) the need to correct clear error of law or prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A party seeking reconsideration must show more than a disagreement with the Court's decision . . . ." *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990). Reconsideration is an "extraordinary remedy," which should be "granted very sparingly." *See* L. Civ. R. 7.1(i) cmt. 6(d); *see also Brackett v. Ashcroft*, No. 03-3988, 2003 U.S. Dist. LEXIS 21312, at *5 (D.N.J. Oct. 7, 2003) ("[R]econsideration is an extraordinary remedy, that is granted very sparingly, and only when dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered.") (quotations omitted). The moving party in a motion for reconsideration must set forth concisely the matter or controlling decisions which counsel believes the Court has overlooked. *Degnan*, 748 F. Supp. at 275. "The only proper ground for granting a motion for reconsideration, therefore, is that the matters or decisions overlooked, if considered by the court, might reasonably have altered the result reached . . . ." *Id.*

A court "may transfer any civil action to any other district where it might have been brought" if transfer serves "the convenience of the parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). In the Third Circuit, courts do not limit "their consideration to . . . convenience of parties, convenience of witnesses, or interests of justice," but rather are instructed to employ an analysis of all "relevant public and private interests." *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (citing *Jumara v. State Farm Ins.*

*Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). The private interests may include: "(1) plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the location of books and records." *Jumara*, 55 F.3d at 879 (citations omitted). The public interests may include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80 (citations omitted).

### III. DISCUSSION

Below, the Court addresses each ground for reconsideration finding that the Plaintiff has failed to show he has met the high standard for such an "extraordinary remedy." First, the Court analyzes Plaintiff's argument that Defendants' Counterclaim is "new evidence" finding that a counterclaim based on virtually the same facts as the initial claim is not new evidence and would not have altered the result of the motion to transfer venue, had the information been available for the Court's consideration. Second, the Court discusses the *Jumara* public and private interest factors concluding that the Court's rejection of Plaintiff's choice of forum is not a clear error of law, because Plaintiff's forum choice is but one factor in the multi-factor analysis. Lastly, the Court addresses manifest injustice and finds that denial of Plaintiff's Motion does not rise to the level of manifest injustice.

#### A. New Evidence

Plaintiff fails to establish the availability of new evidence, which "if considered by the court, might reasonably have altered the result reached." *Degnan*, 748 F. Supp. at 275. The

availability of new evidence is grounds to grant a motion for reconsideration. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (finding that "the purpose of a motion for reconsideration is to . . . present newly discovered evidence" and by merely filing an affidavit containing the same evidence that was available prior to a motion for summary judgment, plaintiff failed to provide the court any newly discovered evidence on his motion for reconsideration). "There is nothing to prevent the Court from examining new facts or evidence that might lead to a different result if considered by the Court." *Degnan*, 748 F. Supp. at 275.

Here, Plaintiff argues that "this Court should consider new evidence [the Defendants' Counterclaim, based on the Employment Agreement] in re-evaluating whether New Jersey or New York has a greater interest in this lawsuit." (Pl. Reply Br. at 3). Plaintiff states that under the Employment Agreement, when "a New York corporation attempts to restrict a New Jersey resident from engaging in competition, New Jersey courts have a strong interest in providing a forum for its residents and in enforcing the contractual obligation of parties who contract with New Jersey residents." (Pl. Moving Br. at 20). Defendants argue, "[t]he interest of New York vis-à-vis the 'non-compete' provision of a New York contract pertaining to a New York corporation operating in New York exceeds that of New Jersey." (Def. Opp. Br. at 4). The Court agrees with Defendants.

As the Defendants state, "Plaintiff did business with [D]efendants in New York [,] [and] [P]laintiff signed contracts . . . in New York, which were to be construed under New York law." (*Id.* at 4). The facts surrounding the "new evidence" are virtually identical to those set forth in the Plaintiff's action for breach of the SRA, and thus the Court already considered these arguments in its August 17, 2011 decision when it deemed transfer of venue to the Eastern District of New York proper. (*Compare* initial Motion to Change Venue (D.E. 11 at 3) ("[T]he

7

significant events giving rise to [P]laintiff's claims, namely his employment in New York and the book valuation of his employer, are matters of concern to New York and not New Jersey, as is the claim the [P]laintiff violated the terms of the non-compete provision of his Employment Agreement."), *and* Reply Affirmation of Michael Levine in support of initial Motion to Change Venue (D.E. 15 at 2) ("[P]laintiff's choice is not proper because his action relates to the Stock Redemption Agreement, negotiated and executed in New York, which by its terms is governed by New York law, pertains to a New York corporation, having its principle place of business in Long Island City, which does 98% of its business in New York, and involves an employee who worked in [D]efendants' Long Island City offices on a daily basis."), *with* Motion for Reconsideration Def. Reply Br. at 4 ("Plaintiff did business with [D]efendants in New York; [P]laintiff signed contracts . . . in New York, which were to be construed under New York law."), *and id*. ("The interest of New York vis-à-vis the 'non-compete' provision of a New York contract pertaining to a New York corporation operating in New York exceeds that of New Jersey.")).

Courts in this jurisdiction have granted motions for reconsideration in cases where new evidence was offered to clarify an issue and the new evidence has been by way of "overlooked" materials or "an extensive record." *See Berry v. Lombardi*, No. 00-2918, 2006 U.S. Dist. LEXIS 20342, at *8 (D.N.J. Mar. 22, 2006) (granting a motion for reconsideration and finding that after reviewing "voluminous materials submitted in support of [p]laintiff's . . . motion" the Court had overlooked an important medical report containing findings from several tests that showed plaintiff had suffered severe emotional distress and thus the defendant's summary judgment motion dismissing plaintiff's claim for emotional distress should not have been granted); *see also Capell v. Lowe's Home Improvement*, No. 03-3208, 2005 U.S. Dist. LEXIS 22463, at *8 (D.N.J.

Sept. 23, 2005) (granting a motion for reconsideration of defendants' motion for summary judgment in an employment matter because the defendants submitted an "extensive record" of repeated notices and warnings given to the plaintiffs, showing that despite said repeated warnings plaintiffs failed to complete the required paperwork or work the required number of hours). Defendants' Counterclaim in this case is distinguishable from the newly discovered, game-changing materials in *Berry* and *Capell*.

     Here, the Defendants' Counterclaim based on Plaintiff's breach of the Employment Agreement does not change the Court's analysis, because the analysis in the Court's August 17, 2011 Opinion included substantial discussion of the SRA, an agreement similar to the Employment Agreement with respect to its New York focus. Both agreements were executed on the same date in the same meeting and contain similar references to performance in New York. Therefore, although the Counterclaim implicates a document not explicitly analyzed by the Court in its August 17, 2011 Opinion, explicit analysis of the Employment Agreement in the Court's previous Opinion would not have altered that decision in any way.

     Any additional references in the Employment Agreement to New Jersey are minor. For example, in the Employment Agreement, the non-compete provision itself states that the "Employee shall not, directly or indirectly, within the States of New York, or New Jersey, . . . enter into or engage in any business in competition with the business of Employer . . . for a period of two (2) years . . . ." (Employment Agreement ¶ 8). Additionally, the Employment Agreement states that Plaintiff's mailing address is in New Jersey. (*Id.* ¶ 10). Neither reference indicates that the action itself arose in New Jersey. *See Jumara*, 55 F.3d at 879 (finding that the third private interest factor is "whether the claim arose elsewhere"). Indeed, merely listing New Jersey—along with New York—as a location where competition is

9

prohibited, and disclosing a New Jersey mailing address do not rise to the level of influencing the Court's overall analysis under the *Jumara* private interest factors.

Other than these two New Jersey references, the Employment Agreement—like the SRA, analyzed thoroughly in the Court's August 17, 2011 Opinion—primarily contains references to New York. For example, the Employment Agreement states that "[t]he Employee's [Plaintiff's] duties under this Agreement shall be rendered at Employer's [Defendants'] office in New York, and in the greater New York metropolitan area." (*Id*. ¶ 4). The Employment Agreement further states that any arbitration proceeding "shall be conducted . . . in New York City." (*Id*. ¶ 14). The Employment Agreement also verifies that Defendant Swing Staging is a New York corporation with its mailing address in Long Island City, New York. (*Id*. ¶ 10). Additionally, similar to the SRA, the Employment Agreement states "[t]his Agreement shall be construed under and governed by the laws of the State of New York." (*Id*. ¶ 16).

Other features of the Employment Agreement mirror the SRA. Similar to the SRA, the Employment Agreement "implicates the Eastern District of New York because it looks to the conduct of New York corporations and residents." *Frato*, 2011 U.S. Dist. LEXIS 91754, at *11. Furthermore, under the language of the Employment Agreement itself, "[t]he Employee's duties under this Agreement shall be rendered at Employer's office in New York, and in the greater New York metropolitan area." (Employment Agreement ¶ 4). Therefore, in light of the overall New York character of the Employment Agreement, the document's minor references to New Jersey do not persuade the Court that the document underlying Defendants' Counterclaim changes the analysis on transfer.

Because the facts surrounding the execution, performance, and alleged breach of the Employment Contract are substantially similar to the material facts that the court considered

under the SRA, the Plaintiff has failed to provide new evidence that would have led to a different result if considered by the Court. *Degnan*, 748 F. Supp. at 275. Reconsideration on the basis of new evidence is thus unwarranted.

### B.  Clear Error of Law

Plaintiff argues that "[b]y dismissing the Plaintiff's choice of forum, this Court ignored the law of the Third Circuit, setting forth that a Plaintiff's choice is of paramount importance." (Pl. Moving Br. at 12). Defendants counter that "[t]he Court clearly considered the issue (at page 7 of the [August 17, 2011] Decision); recognized that a plaintiff's choice of forum is a paramount consideration, and correctly determined that 'the events giving rise to this action bear little relation to New Jersey.'" (Def. Opp. Br. at 3). In its August 17, 2011 Opinion, this Court found that Plaintiff's original forum choice was not entitled to complete deference because the events giving rise to this action occurred primarily in New York. *See Frato*, 2011 U.S. Dist. LEXIS 91754, at *8-9. The Court agrees with Defendants.

Plaintiff's choice of forum is not the Court's only consideration when deciding a motion to transfer venue. *Wm. H. McGee & Co., Inc. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 290 (D.N.J. 1997). The moving party has the burden of demonstrating that the court overlooked facts or legal issues in its decision. *Hackensack Riverkeeper, Inc. v. Del. Otsego Corp.*, No. 05-4806, 2007 U.S. Dist. LEXIS 43559, at *6 (D.N.J. June 14, 2007).

Here, Plaintiff asks the Court to grant his motion for reconsideration based on Plaintiff's choice of forum, which is only one of the five *Jumara* private interest factors the Court must consider. The Third Circuit has stated that a district court must balance all five of the *Jumara* private interest factors against the public interest factors. 55 F.3d at 879-880. Plaintiff's approach would essentially reduce the private and public factors analysis to a one-factor test, and

11

the Court is unwilling to do so.  Instead, in its August 17, 2011 Opinion, the Court weighed the relevant private and public factors set forth by the Third Circuit and found that both the private and public factors warranted transfer to the Eastern District of New York.

This Motion merely expresses the "Plaintiff's disagreement with the Court's analysis of the private and public factors." *Kelly-Brown v. Oprah Winfrey*, No. 11-4360, 2011 U.S. Dist. LEXIS 144215, at *6 (D.N.J. Dec. 15, 2011).  "Plaintiff[] merely seek[s] a second bite at the proverbial apple—a chance to re-hash arguments already rejected by the Court because [he] disagree[s] with the Court's application of [the legal standard]." *Delalla v. Hanover Ins.*, No. 09-2340, 2010 U.S. Dist. LEXIS 104323, at *7 (D.N.J. Sept. 30, 2010).  A disagreement with the Court's decision does not warrant the "extraordinary remedy" of reconsideration. *Kelly-Brown*, 2011 U.S. Dist. LEXIS 144215, at *6.  As such, Plaintiff failed to prove a clear error in law warranting reconsideration.

      **C.**     **Manifest Injustice**

Finally, Plaintiff fails to show that this Motion should be granted to prevent manifest injustice.  The Court interprets Plaintiff's argument that he would face a hardship if the case were transferred to the Eastern District of New York as an argument under manifest injustice.  The Court will only grant a motion for reconsideration if not doing so would rise to the level of manifest injustice. *Seidman v. Am. Mobile Sys.*, 965 F. Supp. 612, 629 (E.D. Pa. 1997).  Courts in this District have held that there is no manifest injustice in transferring a claim to another venue where another jurisdiction is ready to accept a movant's case, where the movant is seeking to re-litigate issues previously addressed by the court, or when the movant merely asserts limited connection to a jurisdiction and that a particular venue would be more convenient. *St. Hill v. Gonzalez*, 225 F. App'x 76, 80 (3d Cir. 2007) (holding that there would not be manifest injustice

in transferring an immigration case to the Second Circuit because the defendant had "counsel ready to proceed in New York; the case ha[d] been accepted for review; and it will proceed expeditiously upon transfer"); *but see Bonhometre v. Gonzalez*, 414 F.3d 442, 446 n.5 (3d. Cir. 2005) (holding that after waiting for a long period of time for the resolution of his claims, "it would be a manifest injustice to transfer the case to another court for duplicative proceedings").

Here, the Counterclaim has already been filed in the Eastern District of New York, which demonstrates that the court is ready to accept Plaintiff's case. Additionally, as Defendants mentioned in their moving papers, there are two attorneys who are admitted to practice in New York, who are employees of Plaintiff's counsel's firm, and have been involved in this litigation. (D.E. 32 at 4-5). Furthermore, Plaintiff is asking for a second bite of the apple because counsel has raised the same arguments raised in the motion to transfer venue. There is no manifest injustice in this case because the Court previously considered the same issues raised here. Denial of Plaintiff's Motion does not rise to the level of manifest injustice as defined by the Third Circuit. Unlike *Bonhometre*, Plaintiff would not be subjected to duplicative proceedings because this case has not been litigated, as there has been no exchange of discovery. Thus, Plaintiff has failed to demonstrate that denial of the Motion would result in manifest injustice.

## IV. CONCLUSION

The Court finds that Plaintiff failed to demonstrate the availability of new evidence that would change the prior decision, the need to correct clear error of law, or prevent manifest injustice. For these reasons, Plaintiff Marc Frato's motion for reconsideration is DENIED. An appropriate Order will accompany this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**